## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE HERITAGE FOUNDATION )<br>214 Massachusetts Avenue, NE )<br>Washington, D.C. 20002 )<br> )<br>MIKE HOWELL )<br>214 Massachusetts Avenue, NE )<br>Washington, D.C. 20002 )<br> )<br>*Plaintiffs,* )<br> )<br>v. )<br> )<br>UNITED STATES DEPARTMENT )<br>OF HOMELAND SECURITY )<br>2707 Martin Luther King Jr., Ave, SE )<br>Washington, DC 20528, )<br> )<br>Defendant. )<br>_____ ) | Civil Action No. |

## **COMPLAINT**

Plaintiffs Heritage Foundation ("Heritage") and Mike Howell (collectively "Plaintiffs") for their complaint against Defendant United States Department of Homeland Security ("the Department" or "DHS") allege on knowledge as to Plaintiffs, and information and belief as to all other matters, as follows:

1.     This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to compel the production of records related to security provided by the United States Secret Service ("Secret Service"), a component agency of DHS, to the Vice President of the United States, Kamala Harris ("Vice President Harris"), and her family.  FOIA Request  No. 20230182 (Nov. 4, 2022) ("Request" or "Plaintiffs' Request") (Ex. 1).

**PARTIES**

2.      Plaintiff The Heritage Foundation ("Heritage") is a Washington, D.C.-based nonpartisan public policy organization with a national and international reputation whose mission is to "formulate and promote public policies based on the principles of free enterprise, limited government, individual freedom, traditional American values, and a strong national defense." Heritage Foundation, *About Heritage*, *found at* https://www.heritage.org/about-heritage/mission (last visited Jan. 31, 2024). Heritage is a not-for-profit section 501(c)(3) organization which engages in substantial dissemination of information to the public. Heritage operates a national news outlet, *The Daily Signal.*

3.      Plaintiff Mike Howell leads The Heritage Foundation's Oversight Project and is an author for *The Daily Signal*. The Oversight Project is an initiative aimed at obtaining information via Freedom of Information Act requests and other means in order to best inform the public and Congress for the purposes of Congressional oversight.   The requests and analysis of information are informed by Heritage's deep policy expertise. By function, the Oversight Project is primarily engaged in disseminating information to the public. *See, e.g*., Oversight Project, *found at* https://www.heritage.org/oversight (last visited Jan. 31, 2024); X (aka: Twitter), *found at* @OversightPR (last visited Marh 13, 2024). Staff for the Oversight Project routinely appear on television, radio, print, and other forms of media to provide expert commentary on salient issues in the national debate.  *Id.*

4.      Defendant U.S. Department of Homeland Security is an Executive Branch department of the United State Government.  Relevant to the herein matter, Secret Service is charged with security for and providing transportation to the Vice President.  DHS is an agency

within the meaning of 5 U.S.C. § 552(f)(1) and, upon information and belief, has in its possession, custody, and control records to which Plaintiffs seeks access.

## JURISDICTION AND VENUE

5.      The Court has subject matter jurisdiction pursuant to 5 U.S.C. § 552(a)(4)(B) because this action is brought in the District of Columbia and 28 U.S.C. § 1331 because the resolution of disputes under FOIA presents a federal question.

6.      Venue lies in this district pursuant to 28 U.S.C. section 1391(e) and 5 U.S.C. § 552(a)(4)(B).

7.      Plaintiffs seek declaratory relief under 28 U.S.C. §§ 2201–2202 and Rule 57 of the Federal Rules of Civil Procedure

## STATEMENT OF FACTS

8.      On November 4, 2022, Plaintiffs submitted the Request to Secret Service seeking:

All records regarding Vice President Kamala Harris, and her family, Douglas Craig Emhoff, Ella Emhoff, and Cole Emhoff, concerning the following:

1.   Residences:

   a.  All records related to the costs that have been incurred or are expected to be incurred by the government related to the protection of temporary and permanent residences and rentals (including short-term and long-term rentals) used by Vice President Harris, Douglas Craig Emhoff, Ella Emhoff, and Cole Emhoff. This includes but is not limited to: Blair House, Washington D.C., U.S. Naval Observatory, Washington D.C., Brentwood Los Angeles, California, Westlight complex, Washington D.C., SoMa condo, San Francisco California.

2.   Personal Security:

   a.  All records related to plans for the sharing of information between the Secret Service and any person or entity providing security to Vice President Harris and her family, including but not limited to the sharing of the Secret Service's Master Central Index or other confidential databases.

    b.  All confidentiality agreements entered into between the Secret Service and any person or entity providing security to Vice President Harris and her family.

    c.  All records related to the costs that have been incurred or are expected to be incurred by the government related to Vice President Harris and her family's use of security.

3.  Air Travel Expenses:

    a.  Any and all documents, including invoices or bills, related to payments for or costs of air transportation of U.S. Secret Service personnel on Air Force Two and/or air and motor transportation.

    b.  Any and all documents, including invoices or bills, related to payments for or costs of air transportation of Secret Service personnel who were engaged in activities related to activities or dealings of Vice President Harris and her family.

    c.  Identities of any and all guests who accompany Vice President Harris and/or her family on air travel.

    d.  Vice President Harris and her family's charter air billing invoices, and their corresponding proof of payment, for any flight dates after 2020.

    e.  Identification of all air travel of Vice President Harris and/or her family that combined professional work appointments and vacation travel, to include the dates of the work appointments and the dates of vacation travel.

    f.  Any and all billing and payment information from the Secret Service regarding the air transportation cost of the Secret Service's protective details which accompanied Vice President Harris and her family during the Presidential campaign.

    g.  Please conduct a search of the Secret Services' relevant files and provide documents showing the total costs per trip for the air transportation of the Secret Service's agents in the 2019 campaign. We are requesting the Secret Service redacted portions of the documents which disclosed the total passengers, the total Secret Service passengers, the total cost of each leg and the cost per passenger on each of the campaign flights.

4.  Vacation Travel Expenses:

a. Requests copies of records of or reflecting the number of Secret Service agents involved in the detail for Vice President Harris and her family's flight and vacation in Hawaii

b. Any and all documents, including invoices or bills, related to payments or costs for Vice President Harris Secret Service members while on the island of Kauai and at Haena State Park.

c. Any and all documents, including invoices or bills, related to payments or costs for Fist Gentleman Douglas Emhoff's travel and stay in Hawaii on August 25, 2021.

d. Identities of any and all guests hosted by Vice President Harris and/or her family while on vacation.

5. Secret Service Issues or Incidents:

a. Any records regarding Secret Service security and or medical incidents that occurred while protecting Kamala Harris and her family.

b. All communication between Secret Service agents who are protecting the family and their supervisors and or Office of Professional responsibility, and or Office of Human Resources which reference Kamala Harris and or her family.

c. All Secret Service Memorandum that reference Kamala Harris and or her family.

d. All SSF 3361 (Civilian Employee Claim for Loss or Damage to Personal Property) that reference Kamala Harris and or her family.

Request at 1–3.

9.      The Request sought records for the limited timeframe of January 21, 2019, to the present. *Id* at 3.

10.      The Request sought a fee waiver based on the public interest in the amount of taxpayer funds used to fund the Vice President's security.  Plaintiff Heritage Foundation is a not-for-profit section 501(c)(3) organization which engages in substantial dissemination of information

to the public and that Plaintiff Howell is an author for *The Daily Signal*, a major news outlet operated by the Heritage Foundation. *Id.* at 4–5.

On November 8, 2022, Secret Service acknowledged receipt of the Request and assigned it tracking number 20230182.  Letter from U.S. Secret Service Freedom of Information Act Program to Mike Howell (Nov. 8, 2022) ("Acknowledgment Letter") (Ex. 3).  The Acknowledgment Letter said that Defendant received the Request on November 8, 2022 and invoked the 10-day extension in responding "pursuant to 6 C.F.R., Part 5 § 5.5(c)."

The Acknowledgment Letter further noted that Secret Service would consider the fee waiver once the office " . . . ascertains that the billable costs will exceed our $25.00 billing threshold." *Id.*

11.     On November 17, 2022, Secret Service provided Plaintiffs a status update, writing "Secret Service FOIA Office has performed a reasonable search" and had located records.  Letter from Freedom of Information Act Program to Mike Howell at 2 (Nov. 17, 2022) ("November 17 Letter") (Ex. 4).  The November 17 Letter further explained that Secret Service would process the records in accordance with FOIA and delivered upon completion, but "[Secret Service] may encounter some delay in processing your request." *Id*.

12.     On February 18, 2023, Secret Service responded by email to a telephonic inquiry into the status of the documents, stating the responsive records were located and being processed.  Email from Freedom of Information Act Program to Roman Jankowski (Feb. 18, 2023) (Ex. 5).  The email attached the Acknowledgment Letter and November 17 Letter as reference. *Id*.

13.     On April 17, 2023, Secret Service sent a letter stating that the responsive documents were still being processed.  Letter from Freedom of Information Act Program to Mike Howell (Apr. 17, 2023) (Ex. 7).

14.     On September 12, 2023, the Plaintiff followed up by email correspondence and requested a status update on the previously requested FOIA records.  Email from Roman Jankowski to Freedom of Information Act Program (Sep. 17, 2023) (Ex. 8).  Plaintiffs do not have a record of a response to this inquiry.

15.     Twenty business days from November 4, 2022, is December 6, 2022.

16.     Thirty business days from November 4, 2022, is December 20, 2022.

17.     As of the date of this filing, Secret Service has failed to produce any records, responsive or other, in response to the Request, nor has it otherwise demonstrated that the requested records are exempt from production.  Additionally, Secret Service has failed to meet either the twenty or thirty business day time frame to provide a determination.  *See* 5 U.S.C. § 552(a)(6)(A)–(B).

18.     Plaintiffs have constructively exhausted their administrative remedies as Secret Service failed to make a determination within the applicable time frame.  *See* 5 U.S.C. § 552(a)(6)(C)(i).

**FIRST CLAIM FOR RELIEF**
**Violation FOIA, 5 U.S.C. § 552**
**Failure to Conduct Adequate Searches for Responsive Records.**

19.     Plaintiffs re-allege the foregoing paragraphs as if fully set out herein.

20.     FOIA requires all doubts to be resolved in favor of disclosure.  "Transparency in government operations is a priority of th[e Biden] . . . Administration."  Attorney General, *Memorandum for Heads of Executive Departments and Agencies:  Freedom of Information Act Guidelines*, at 4 (Mar. 15, 2022).

21.     Plaintiffs properly requested records within the possession, custody, and control of Defendant.

22.     Defendant is subject to FOIA and therefore must make reasonable efforts to search for requested records.

23.     Defendant has failed to promptly review agency records for the purpose of locating and collecting those records that are responsive to Plaintiffs' FOIA Request.

24.     Defendant's failure to conduct searches for responsive records violates DHS regulations.

25.     Plaintiffs have a statutory right to the information they seek.

26.     Defendant is in violation of FOIA.

27.     Plaintiffs are being irreparably harmed by reason of Defendant's violation of FOIA.  Plaintiffs are being denied information to which they are statutorily entitled and that is important to carrying out Plaintiffs' functions as a non-partisan research and educational institution and publisher of news.  Plaintiffs will continue to be irreparably harmed unless Defendant is compelled to comply with the law.

28.     Plaintiffs have no adequate remedy at law.

29.     Plaintiffs have constructively exhausted their administrative remedies.

**<u>SECOND CLAIM FOR RELIEF</u>**
**Violation of FOIA, 5 U.S.C. § 552**

**Wrongful Withholding of Non-Exempt Responsive Records**

30.     Plaintiffs re-allege the foregoing paragraphs as if fully set out herein.

31.     FOIA requires all doubts to be resolved in favor of disclosure.  "Transparency in government operations is a priority of th[e Biden] . . . Administration."  Attorney General, *Memorandum for Heads of Executive Departments and Agencies:  Freedom of Information Act Guidelines*, at 4 (Mar. 15, 2022).

32.     Plaintiffs properly requested records within the possession, custody, or control of Defendant.

33.     Defendant is subject to FOIA, and therefore must release to a FOIA requester any non-exempt records and provide a lawful reason for withholding any records.

34.     Defendant is wrongfully withholding non-exempt records requested by Heritage by failing to produce any records responsive to Plaintiffs' FOIA Request.

35.     Defendant is wrongfully withholding non-exempt-agency records requested by Plaintiffs by failing to segregate exempt information in otherwise non-exempt records responsive to Plaintiffs' FOIA Request.

36.     Defendant's failure to provide all non-exempt responsive records violates FOIA and DHS regulations.

37.     Plaintiffs have a statutory right to the information they seek.

38.     Defendant is in violation of FOIA.

39.     Plaintiffs are being irreparably harmed by reason of Defendant's violation of FOIA.  Plaintiffs are being denied information to which they are statutorily entitled and that is important to carrying out Plaintiffs' functions as a non-partisan research and educational institution and publisher of news.  Plaintiffs will continue to be irreparably harmed unless Defendant is compelled to comply with the law.

40.     Plaintiffs have no adequate remedy at law.

41.     Plaintiffs have constructively exhausted their administrative remedies.

## THIRD CLAIM FOR RELIEF
**Violation of FOIA, 5 U.S.C. § 552**
**Wrongful Denial of Fee Waiver**

42.     Plaintiffs re-allege the foregoing paragraphs as if fully set out herein.

43.     FOIA requires all doubts to be resolved in favor of disclosure.  "Transparency in government operations is a priority of th[e Biden] . . . Administration."  *Attorney General, Memorandum for Heads of Executive Departments and Agencies:  Freedom of Information Act Guidelines*, at 4 (Mar. 15, 2022).

44.     Plaintiffs properly requested records within the possession, custody, or control of Defendant.

45.     Defendant has constructively denied Plaintiffs' application for a fee waiver pursuant to 5 U.S.C. § 552(a)(4)(A)(ii) & (iii) and 6 C.F.R. § 5.11.

46.     The Request does not have a commercial purpose because Heritage is a 501(c)(3) nonprofit, Howell acts in his capacity as a Heritage employee, and release of the information sought does not further Plaintiffs' commercial interest.

47.     Plaintiffs are members of the news media as they "gather[] information of potential interest to a segment of the public, use[] . . . [their] editorial skills to turn the raw materials into a distinct work, and distribute[] that work to an audience" via Heritage's major news outlet, *The Daily Signal*.  5 U.S.C. § 552(a)(4)(a)(ii).

48.     Disclosure of the information sought by the Request also "is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government."  5 U.S.C. § 552(a)(4)(A)(iii).

49.     Defendant has "failed to comply with a[]time limit under paragraph (6)" as to the Request.  5 U.S.C. § 552(a)(4)(A)(viii)(I).

10

50.    Plaintiffs have a statutory right to a fee waiver.

51.    Defendant is in violation of FOIA by denying a fee waiver.

52.    Plaintiffs are being irreparably harmed by reason of Defendant's violation of FOIA.  Plaintiffs are being denied a fee waiver to which they are statutorily entitled and that is important to carrying out Plaintiffs' functions as a non-partisan research and educational institution and publisher of news.  Plaintiffs will continue to be irreparably harmed unless Defendant is compelled to comply with the law.

53.    Plaintiffs have no adequate remedy at law.

54.    Plaintiffs have constructively exhausted their administrative remedies.

**FOURTH CLAIM FOR RELIEF**
**Violation of FOIA, 5 U.S.C. § 552**
**Statutory Bar Against Charging Fees**

55.    Plaintiffs re-allege the foregoing paragraphs as if fully set out herein.

56.    FOIA requires all doubts to be resolved in favor of disclosure.  "Transparency in government operations is a priority of th[e Biden] . . . Administration."  Attorney General, *Memorandum for Heads of Executive Departments and Agencies:  Freedom of Information Act Guidelines*, at 4 (Mar. 15, 2022).

57.    Plaintiffs properly requested records within the possession, custody, or control of Defendant.

58.    The Request does not have a commercial purpose because Heritage is a 501(c)(3) nonprofit, Howell acts in his capacity as a Heritage employee, and release of the information sought does not further Plaintiffs' commercial interest.

59.    Plaintiffs are members of the news media as they "gather[] information of potential interest to a segment of the public, use[] . . . [their] editorial skills to turn the raw

materials into a distinct work, and distribute[] that work to an audience" via Heritage's major

news outlet, *The Daily Signal*.  5 U.S.C. § 552(a)(4)(a)(ii).

60.     Disclosure of the information sought by the Request also "is in the public interest

because it is likely to contribute significantly to public understanding of the operations or

activities of the government."  5 U.S.C. § 552(a)(4)(A)(iii).

61.     Defendant has "failed to comply with a[]time limit under paragraph (6)" as to the

Request.  5 U.S.C. § 552(a)(4)(A)(viii)(I).

62.     Defendant is currently statutorily barred from charging fees related to Plaintiffs'

FOIA Request.  Therefore, Plaintiffs have a statutory right to have their request processed

without being charged any fees.

63.     Plaintiffs are being irreparably harmed by reason of Defendant's violation of

FOIA.  Plaintiffs will continue to be irreparably harmed unless Defendant is compelled to

comply with the law.

64.     Plaintiffs have no adequate remedy at law.

65.     Plaintiffs have constructively exhausted their administrative remedies.

**WHEREFORE** as a result of the foregoing, Plaintiffs pray that this Court:

A.     Order Defendant to conduct a search or searches reasonably calculated to
uncover all records responsive to Plaintiffs' FOIA Request;

B.     Order Defendants to produce, within twenty days of the Court's order, or by such
other date as the Court deems appropriate, any and all non-exempt records
responsive to Plaintiffs' FOIA Request and indexes justifying the withholding of
any responsive records withheld in whole or in part under claim of exemption;

C.      Enjoin Defendants from continuing to withhold any and all non-exempt records

        responsive to Plaintiffs' FOIA Requests;

D.      Retain jurisdiction over this matter as appropriate;

E.      Award Plaintiffs their costs and reasonable attorneys' fees in this action as

        provided by 5 U.S.C. § 522(a)(4)(E); and

F.      Grant such other and further relief as this Court may deem just and proper.


Dated: March 13, 2024                           Respectfully submitted,


                                                /s/ Timothy P. Griffin, Esq.
                                                TIMOTHY P. GRIFFIN
                                                Bar No: VA83195
                                                Griffin Law, PLLC
                                                1128 Cottontown Manor Drive
                                                Suite 302
                                                Forest, Virginia 24551
                                                Telephone: 434-660-6198
                                                Email: Tim@GriffinlawPLLC.com


                                                SAMUEL EVERETT DEWEY
                                                Bar No. 999979
                                                Chambers of Samuel Everett Dewey, LLC
                                                Telephone: (703) 261-4194
                                                Email: samueledewey@sedchambers.com

                                                ERIC NEAL CORNETT
                                                BAR No:  1660201
                                                Law Office of Eric Neal Cornett
                                                70 I Street SE, Apt. 525
                                                Washington, District of Columbia, 20003
                                                Email: neal@cornettlegal.com


                                                *Counsel for Plaintiffs*

# Exhibit 1



# Rep. Hinson to introduce bill halting funding for Harris travel costs until she visits border

By Adam Shaw

Published May 20, 2021

Fox News

**EXCLUSIVE**: Rep. Ashley Hinson, R-Iowa, on Thursday will introduce a bill that would bar taxpayer money from being used for the travel expenses of Vice President Kamala Harris until she visits the southern border and issues a report on how to solve the crisis there.

"We have an absolute crisis at the border, and Vice President Harris was appointed to lead the administration's efforts on the border crisis, but it's been 56 days, and in that time she hasn't been to the border once," Hinson told Fox News in an interview Wednesday. "She hasn't held a news conference on the administration's efforts for a plan, and I think it's time she does that."

**KAMALA HARRIS CALLS FOR 'IMMEDIATE RELIEF' FOR NORTHERN TRIANGLE IN VIRTUAL MEETING WITH MEXICAN PRESIDENT**

The See The Crisis Act would prohibit federal funds from being used to pay travel expenses for the vice president, including Air Force Two and security details for any travel outside the U.S., until she has visited the border to review the crisis and submitted a report to Congress.

That report would include all of the vice president's meetings with agencies at the border, plans to deal with the crisis and the amount of foreign aid to be given to Northern Triangle countries to respond to the crisis.

President Biden appointed Harris in March to lead diplomatic talks with Mexico and Northern Triangle countries as part of the effort to solve the "root causes" of the crisis that has seen a historic number of migrants surge to the border in recent months.

"I'm thinking of corruption, violence and poverty, the lack of economic opportunity, the lack of climate adaptation and climate resilience, the lack of good governance," Harris said earlier this month as she listed root causes.

While the White House has emphasized that Harris' job is not the border per se, but rather the diplomatic outreach to those countries, former Trump officials and Republicans have pushed back, saying that in order to deal with root causes, it is important she visit the border.

**EX-TRUMP DHS OFFICIALS CALL FOR MAYORKAS' DISMISSAL OVER BORDER CRISIS: 'ENOUGH IS ENOUGH'**

They have accused her of being "missing" at the border while she takes trips to bakeries in Chicago and elsewhere instead. Harris has so far met virtually with leaders of Mexico and Guatemala and is expected to visit those countries next month.

Meanwhile, 178,000 migrants were encountered in April alone as the administration has been scrambling to deal with the influx of unaccompanied children in particular.

**BIGGS ACCUSES DHS OF 'CLEAR VIOLATION' OF LAW BY RELEASING MIGRANTS INTO US WITHOUT COURT DATES**

"She's putting yarn shops and bakeries before the border," Hinson said of Harris. "She's Zoomed with the Mexican president, but I think that sends the absolute wrong message to the men and women that are putting their lives on the line every day, not to mention the men and women and families that live in these communities along the border and the communities of Iowa -- every state is a border state."

The criticism of Harris comes as part of the broader criticism of the administration, with both Biden and DHS Secretary Alejandro Mayorkas coming under fire for their roles in the crisis.

The administration has blamed not only root causes for the crisis but also the Trump administration's alleged lack of preparedness for a surge in migrants. Critics have instead pointed to the rollback of Trump-era policies, like the Migrant Protection Protocols

Rep. Hinson: No immediate funding to Kamala Harris' travel costs, her visit border

(MPP), border wall construction and increased interior enforcement.

**CLICK HERE TO GET THE FOX NEWS APP**

Hinson said border officials have been unable to tell her how many migrants are coming to her district. She says that if Harris visits the border, "she'd hear exactly what I heard from Customs and Border Protection, which is that they need resources, they need policies to close the spigot of illegal immigration that's happening at the border."

As the country faces a number of issues, Hinson said the border crisis is one of the top issues for Iowans back home.

"People are concerned," she said. "We have thousands of Iowa children waiting for homes, and they should be the priority, and instead the administration has turned a blind eye, encouraged and incentivized illegal immigration at a time when we need to be focused on taking care of our people, and I think that's what Iowans see and hear and know -- so they've given me a clear directive to hold the administration accountable, and that's what I'm doing."

Adam Shaw is a politics reporter for Fox News Digital, primarily covering immigration and border security.

He can be reached at adam.shaw2@fox.com or on Twitter.

🖨 Print   ✕ Close

**URL**
https://www.foxnews.com/politics/rep-hinson-bill-kamala-harris-travel-costs-border-visit

Home | Video | Politics | U.S. | Opinion | Entertainment | Tech | Science | Health | Travel | Lifestyle | World | Sports | Weather

Privacy | Terms

This material may not be published, broadcast, rewritten, or redistributed. © FOX News Network, LLC. All rights reserved. Quotes displayed in real-time or delayed by at least 15 minutes. Market data provided by Factset. Powered and implemented by FactSet Digital Solutions. Legal Statement. Mutual Fund and ETF data provided by Refinitiv Lipper.Do Not Sell my Personal Information - New Terms of Use - FAQ

# Exhibit 2



🖶 Print   ✖ Close

# Heritage Foundation launches Conservative Oversight Project aimed at 'exposing' Biden admin, leftist policies

By Houston Keene

Published January 20, 2022

Fox News

**FIRST ON FOX:** Conservative think tank Heritage Foundation is launching a new "Conservative Oversight Project" aimed at "exposing" the Biden administration and leftist policies it says are being pushed through government.

Former Department of Homeland Security (DHS) attorney Mike Howell and former acting Commissioner of U.S. Customs and Border Protection (CBP) Mark Morgan are leading the new Heritage Foundation project.

**HERITAGE FOUNDATION SCHOLAR BREAKS DOWN 'ABSURD' FEDERALIZATION OF ELECTIONS IN DEMOCRATS' BILL**

Howell told Fox News Digital in an interview Wednesday that "recognizing that the biggest battles ahead in the next couple of years are going to be ones of oversight and accountability," the project is planned to aggressively investigate and provide oversight to both government and nongovernment organizations (NGOs) drawing upon Heritage Foundation resources.



Then-acting Customs and Border Protection Commissioner Mark Morgan talks to reporters in the James Brady Press Briefing Room at the White House Oct. 8, 2019 in Washington, D.C. (Photo by Chip Somodevilla/Getty Images)

"We are going to FOIA (Freedom of Information Act), we are going to sue all these places to make sure we're getting the information," Howell said. "We're going to make sure Congress has everything they need to know so that they can actually hold this Biden administration accountable."

Howell said the House of Representatives and Senate "haven't done any meaningful oversight and virtually any attempts have been blocked," and that many media organizations are "all carrying the water for the Biden administration."

Morgan told Fox News Digital the project is "about truth, facts, and transparency" and that the Heritage Foundation's new endeavor will touch on several issues facing America, including a large focus on the ongoing border crisis.



President Biden gestures as he speaks during a news conference in the East Room of the White House in Washington, Wednesday, Jan. 19, 2022. (AP Photo/Susan Walsh)

The former acting CBP commissioner also pointed out the discrepancies between the rigorous oversight Congress and outside organizations gave to the previous administration when compared to the Biden White House.

"I support this, I think this was a good thing," Morgan said of the oversight of the previous Trump administration. "Part of Congress'

job is to drive the facts, truth, and transparency and oversight and, hopefully, that then equates to accountability."

**BIDEN ADMIN FORMALLY TERMINATED KEY TRUMP-ERA MIGRATION AGREEMENTS AT HEIGHT OF BORDER CRISIS**

Morgan said America is seeing the "opposite" treatment of the Biden administration oversight-wise compared to the Trump administration and that he "would have been hammered" if he were in charge of U.S. Immigration and Customs Enforcement (ICE) and didn't produce the end-of-year report on border crossing numbers, like the Biden administration has failed to produce.

Howell said the project will also focus on the "slush fund" multitrillion-dollar infrastructure bill, the "connections with Big Tech and the government," and the "woke agenda takeover of the federal government."



Border wall at Abram-Perezville, Texas. The southern border crisis is one of several issues the Biden administration is facing ahead of the 2022 midterms.

The project will also work "chiefly" with "committees of jurisdiction" over government oversight, such as the House and Senate Oversight Committees. Morgan added that they have already engaged with individual lawmakers, but didn't name which. They plan to work with congressmen on both sides of the aisle.

"But this is a project that, I think, is recognized as a need on Capitol Hill," the former DHS attorney said. "In terms of coordination, and attention, and resources, and expertise being devoted to this project."



The Capitol is seen at dawn in Washington, on Election Day, Tuesday, Nov. 2, 2021.  (AP Photo/J. Scott Applewhite)

Another issue of concern by Heritage is the specific NGOs involved in the border crisis, which they say have become "complicit" in human smuggling schemes.

Morgan accused the Biden administration of paying NGOs to "actually help facilitate illegal immigration. Who's getting that money? How much is the federal government giving these NGOs? What is the money being utilized for?" Morgan asked. "That needs to be exposed."

**MIGRANT ENCOUNTERS INCREASED AGAIN AT THE SOUTHERN BORDER IN DECEMBER: COURT DOCS**

Howell also said the Heritage Foundation would continue the Conservative Oversight Project should Congress flip in the 2022 midterms and the White House turn red in 2024.





Heritage Foundation launches 'Conservative Oversight Project' aimed at 'exposing' Biden admin, leftist policies

Dr. Kevin Roberts serves as the seventh president in Heritage's 48-year history. (Heritage Foundation)

**CLICK HERE TO GET THE FOX NEWS APP**

Heritage Foundation president Kevin Roberts said in a press release announcement that the conservative think tank will use this new project to go "on offense to expose the Biden regime and its enablers on Capitol Hill, in the administrative state, and at the state and local level across the nation."

The project comes as several crises rage across America while the media and Democrats in Congress largely have been giving the Biden administration a pass. The southern border crisis is only one of several issues the Biden administration is facing ahead of the 2022 midterm elections, including compounding inflation and a surge in COVID-19 cases.

Houston Keene is a politics writer for Fox News Digital.  Story tips can be sent to Houston.Keene@Fox.com and on Twitter: @HoustonKeene

🖶 Print   ✖ Close

**URL**
https://www.foxnews.com/politics/heritage-conservative-oversight-project-biden-admin-leftist-policies

Home | Video | Politics | U.S. | Opinion | Entertainment | Tech | Science | Health | Travel | Lifestyle | World | Sports | Weather

Privacy | Terms

This material may not be published, broadcast, rewritten, or redistributed. © FOX News Network, LLC. All rights reserved. Quotes displayed in real-time or delayed by at least 15 minutes. Market data provided by Factset. Powered and implemented by FactSet Digital Solutions. Legal Statement. Mutual Fund and ETF data provided by Refinitiv Lipper.Do Not Sell my Personal Information - New Terms of Use - FAQ





### Mike Howell
Investigative Columnist

Mike Howell is an investigative columnist for The Daily Signal and director of The Heritage Foundation's Oversight Project. The Oversight Project is an initiative aimed at obtaining information via Freedom of Information Act requests and other means in order to best inform the public and Congress for the purposes of Congressional oversight. The requests and analysis of information are informed by The Heritage Foundation's deep policy expertise. By function, the Oversight Project is primarily engaged in disseminating information to the public.



VIEW ALL AUTHORS

# Exhibit 3



214 Massachusetts Avenue, NE
Washington, DC 20002

(202) 546-4400
heritage.org

<u>**SENT VIA: COMMERCIAL CARRIER**</u>

November 4, 2022

FOIA Officer
United States Secret Service
Freedom of Information Act and Privacy Act Branch
245 Murray Lane, SW Building T-5
Washington, D.C. 20223

Dear FOIA Officer,

Pursuant to the Freedom of Information Act, 5 U.S.C. § 552, I respectfully request the following records from the United States Secret Service ("Secret Service") regarding, Vice President Kamala Harris, and her family, Douglas Craig Emhoff, Ella Emhoff, and Cole Emhoff:

1. Residences:
   a. All records related to the costs that have been incurred or are expected to be incurred by the government related to the protection of temporary and permanent residences and rentals (including short-term and long-term rentals) used by Vice President Harris, Douglas Craig Emhoff, Ella Emhoff, and Cole Emhoff. This includes but is not limited to: Blair House, Washington D.C., U.S. Naval Observatory, Washington D.C., Brentwood Los Angeles, California, Westlight complex, Washington D.C., SoMa condo, San Francisco California.

2. Personal Security:
   a. All records related to plans for the sharing of information between the Secret Service and any person or entity providing security to Vice President Harris and her family, including but not limited to the sharing of the Secret Service's Master Central Index or other confidential databases.
   b. All confidentiality agreements entered into between the Secret Service and any person or entity providing security to Vice President Harris and her family.
   c. All records related to the costs that have been incurred or are expected to be incurred by the government related to Vice President Harris and her family's use of security.

3. Air Travel Expenses:
   a. Any and all documents, including invoices or bills, related to payments for or costs of air transportation of U.S. Secret Service personnel on Air Force Two and/or air and motor transportation.

1



214 Massachusetts Avenue, NE
Washington, DC 20002

(202) 546-4400
heritage.org

   b.  Any and all documents, including invoices or bills, related to payments for or costs of air transportation of Secret Service personnel who were engaged in activities related to activities or dealings of Vice President Harris and her family.

   c.  Identities of any and all guests who accompany Vice President Harris and/or her family on air travel.

   d.  Vice President Harris and her family's charter air billing invoices, and their corresponding proof of payment, for any flight dates after 2020.

   e.  Identification of all air travel of Vice President Harris and/or her family that combined professional work appointments and vacation travel, to include the dates of the work appointments and the dates of vacation travel.

   f.  Any and all billing and payment information from the Secret Service regarding the air transportation cost of the Secret Service's protective details which accompanied Vice President Harris and her family during the Presidential campaign.

   g.  Please conduct a search of the Secret Services' relevant files and provide documents showing the total costs per trip for the air transportation of the Secret Service's agents in the 2019 campaign.  We are requesting the Secret Service redacted portions of the documents which disclosed the total passengers, the total Secret Service passengers, the total cost of each leg and the cost per passenger on each of the campaign flights.

4.  Vacation Travel Expenses:

   a.  Requests copies of records of or reflecting the number of Secret Service agents involved in the detail for Vice President Harris and her family's flight and vacation in Hawaii

   b.  Any and all documents, including invoices or bills, related to payments or costs for Vice President Harris Secret Service members while on the island of Kauai and at Haena State Park.

   c.  Any and all documents, including invoices or bills, related to payments or costs for Fist Gentleman Douglas Emhoff's travel and stay in Hawaii on August 25, 2021.

   d.  Identities of any and all guests hosted by Vice President Harris and/or her family while on vacation.

5.  Secret Service Issues or Incidents:

   a.  Any records regarding Secret Service security and or medical incidents that occurred while protecting Kamala Harris and her family.

   b.  All communication between Secret Service agents who are protecting the family and their supervisors and or Office of Professional responsibility, and or Office of Human Resources which reference Kamala Harris and or her family.

   c.  All Secret Service Memorandum that reference Kamala Harris and or her family.

   d.  All SSF 3361 (Civilian Employee Claim for Loss or Damage to Personal Property) that reference Kamala Harris and or her family.



214 Massachusetts Avenue, NE
Washington, DC 20002

(202) 546-4400
heritage.org

Please limit the search from January 21, 2019, to the present.

The terms "pertaining to," "referring," "relating," or "concerning" with respect to any given subject means anything that constitutes, contains, embodies, reflects, identifies, states, refers to, deals with, or is in any manner whatsoever pertinent to that subject.

The term "record" means any written, recorded, or graphic matter of any nature whatsoever, regardless of how recorded, and whether original or copy, including, but not limited to, the following: memoranda, reports, expense reports, books, manuals, instructions, financial reports, working papers, records, notes, letters, notices, confirmations, telegrams, receipts, appraisals, pamphlets, magazines, newspapers, prospectuses, inter-office and intra-office communications, electronic mail (emails), MMS or SMS text messages, instant messages, messaging systems (such as iMessage, Microsoft Teams, WhatsApp, Telegram, Signal, Google Chat, Twitter direct messages, Lync, Slack, and Facebook Messenger), contracts, cables, telexes, notations of any type of conversation, telephone call, voicemail, meeting or other communication, bulletins, printed matter, computer printouts, teletypes, invoices, transcripts, diaries, analyses, returns, summaries, minutes, bills, accounts, estimates, projections, comparisons, messages, correspondence, press releases, circulars, financial statements, reviews, opinions, offers, studies and investigations, questionnaires and surveys, and work sheets (and all drafts, preliminary versions, alterations, modifications, revisions, changes, and amendments of any of the foregoing, as well as any attachments or appendices thereto), and graphic or oral records or representations of any kind (including without limitation, photographs, charts, graphs, microfiche, microfilm, videotape, recordings and motion pictures), and electronic, mechanical, and electronic records or representations of any kind (including, without limitation, tapes, cassettes, disks, and recordings) and other written, printed, typed, or other graphic or recorded matter of any kind or nature, however produced or reproduced, and whether preserved in writing, film, tape, disk, videotape or otherwise.

The terms "and" and "or" should be construed broadly and either conjunctively or disjunctively to bring within the scope of this request any information which might otherwise be construed to be outside its scope. The terms "all," "any," and "each" should each be construed as encompassing any and all. The singular includes the plural number, and vice versa. The present tense includes the past and vice versa. The masculine includes the feminine and neuter genders.

The term "communication" means each manner or means of disclosure or exchange of information (in the form of facts, ideas, inquiries, or otherwise), regardless of means utilized, whether oral, electronic, by document or otherwise, and whether in an in-person meeting, by telephone, facsimile, e-mail (desktop or mobile device), text message, MMS or SMS message, messaging systems (such as iMessage, Microsoft Teams, WhatsApp, Telegram, Signal, Google Chat, Twitter direct messages, Lync, Slack, and Facebook Messenger), regular mail, telexes, releases, or otherwise.



214 Massachusetts Avenue, NE
Washington, DC 20002

(202) 546-4400
heritage.org

"Communications with," "communications from," and "communications between" means any communication involving the related parties, regardless of whether other persons were involved in the communication, and includes, but is not limited to, communications where one party is cc'd or bcc'd, both parties are cc'd or bcc'd, or some combination thereof.

Please consider all members of a document "family" to be responsive to the request if any single "member" of that "family" is responsive, regardless of whether the "family member" in question is "parent" or "child."

In the interest of expediency and to minimize the research and/or duplication burden on your staff, please send records electronically if possible.  If this is not possible, please notify me before sending to the mailing address listed below.  If access to this request will take longer than twenty business days, please let me know when I might receive records or be able to inspect the requested records.   Please produce responsive documents as soon as they become available.  In all cases, please communicate with me at the below email address.

Please comply fully with 5 U.S.C. § 552(b).  Accordingly, without limitation to the foregoing, if any portion of this request is denied for any reason, please provide written notice of the records or portions of records that are being withheld and cite each specific exemption of the Freedom of Information Act on which the agency relies.  Moreover, to the extent that responsive records may be withheld in part produce all reasonably segregable portions of those records. Additionally, please provide all responsive documents even if they are redacted in full.

**Fee Waiver Request**

This request is primarily and fundamentally for non-commercial purposes.  As a 501(c)(3) nonprofit, Heritage Foundation does not have a commercial purpose and the release of the information requested is not in Heritage Foundation's commercial interest.   Heritage Foundation's mission is to is to formulate and promote public policies based on the principles of free enterprise, limited government, individual freedom, traditional American values, and a strong national defense.  Heritage Foundation uses the information requested and analyzes it in order to educate the public through social media,[1] broadcast media[2] (traditional and nontraditional) and press releases.[3]  This request is in the public interest because Americans want to know how much of

---

[1] Heritage Foundation.  [@ Heritage] (Accessed: 2022, February 18).  626.8K Followers Twitter. https://twitter.com/Heritage

[2] Fox News.  (Accessed: 2022, February 18).  Heritage Foundation launches Conservative Oversight Project aimed at 'exposing' Biden admin, leftist policies.  https://www.foxnews.com/politics/heritage-conservative-oversight-project-biden-admin-leftist-policies

[3] Heritage Foundation.  (Accessed: 2022, February 18).  Press.  https://www.heritage.org/press .



214 Massachusetts Avenue, NE
Washington, DC 20002

(202) 546-4400
heritage.org

their tax dollars have gone to funding Kamala Harris and her family's day to day life and extracurricular expenses.[4]

Because this is a request by a member of the news media for information of public interest, made in my capacity as an author for the Daily Signal[5] (a major news outlet[6]), I actively gather information of potential interest to our Daily Signal audience, and I use my editorial skills to turn raw materials into a distinct work, and I distribute that work to our Daily Signal audience through podcasts[7] or articles.  I request that you waive all applicable fees associated with this request.

If you deny this request for a fee waiver, please advise me in advance of the estimated charges if they are to exceed $50.  Please send me a detailed and itemized explanation of those charges.

Thank you in advance for considering my request.  If you have any questions, or feel you need clarification of this request please contact me at oversightproject@heritage.org.

Sincerely,

Mike Howell
Senior Advisor and Author at The Daily Signal
The Heritage Foundation
214 Massachusetts Ave, NE
Washington, D.C. 20002

---

[4] Fox News. (Accessed: 2022, November 3). Rep. Hinson to introduce bill halting funding for Harris travel costs until she visits border. https://www.foxnews.com/politics/rep-hinson-bill-kamala-harris-travel-costs-border-visit
[5] Daily Signal.  (Accessed: 2022, February 18).  Mike Howell. https://www.dailysignal.com/author/mike-howell/
[6] Daily Signal.  [@DailySignal] (Accessed: 2022, February 18).  73.7K Followers Twitter. https://twitter.com/DailySignal
[7] Apple.  (Accessed: 2022, March 4).  The Daily Signal Podcast. https://podcasts.apple.com/us/podcast/the-daily-signal-podcast/id1313611947

# Exhibit 4



**DEPARTMENT OF HOMELAND SECURITY**
UNITED STATES SECRET SERVICE
WASHINGTON, D.C. 20223

Freedom of Information Act Program
Communications Center
245 Murray Lane, SW, Building T-5
Mail Stop 8205
Washington, D.C. 20223

                                      Date:   November 8, 2022

The Heritage Foundation
214 Massachusetts Avenue, NE
Washington, DC 20002
Attn:  Mike Howell
Email: oversightproject@heritage.org

File Number:   20230182

Dear Requester:

This letter acknowledges the receipt of your recent Freedom of Information Act (FOIA) request, received by the United States Secret Service (Secret Service) on November 8, 2022, for information regarding, Vice President Kamala Harris, and her family, Douglas Craig Emhoff, Ella Emhoff, and Cole Emhoff:

1. Residences:
a. All records related to the costs that have been incurred or are expected to be incurred by the government related to the protection of temporary and permanent residences and rentals (including short-term and long-term rentals) used by Vice President Harris, Douglas Craig Emhoff, Ella Emhoff, and Cole Emhoff. This includes but is not limited to: Blair House, Washington D.C., U.S. Naval Observatory, Washington D.C., Brentwood Los Angeles, California, Westlight complex, Washington D.C., SoMa condo, San Francisco California;

2. Personal Security:
a. All records related to plans for the sharing of information between the Secret Service and any person or entity providing security to Vice President Harris and her family, including but not limited to the sharing of the Secret Service's Master Central Index or other confidential databases.
b. All confidentiality agreements entered into between the Secret Service and any person or entity providing security to Vice President Harris and her family.
c. All records related to the costs that have been incurred or are expected to be incurred by the government related to Vice President Harris and her family's use of security;

3. Air Travel Expenses:
a. Any and all documents, including invoices or bills, related to payments for or costs of air transportation of U.S. Secret Service personnel on Air Force Two and/or air and motor

transportation.

b. Any and all documents, including invoices or bills, related to payments for or costs of air transportation of Secret Service personnel who were engaged in activities related to activities or dealings of Vice President Harris and her family.

c. Identities of any and all guests who accompany Vice President Harris and/or her family on air travel.

d. Vice President Harris and her family's charter air billing invoices, and their corresponding proof of payment, for any flight dates after 2020.

e. Identification of all air travel of Vice President Harris and/or her family that combined professional work appointments and vacation travel, to include the dates of the work appointments and the dates of vacation travel.

f. Any and all billing and payment information from the Secret Service regarding the air transportation cost of the Secret Service's protective details which accompanied Vice President Harris and her family during the Presidential campaign.

g. Please conduct a search of the Secret Services' relevant files and provide documents showing the total costs per trip for the air transportation of the Secret Service's agents in the 2019 campaign. We are requesting the Secret Service redacted portions of the documents which disclosed the total passengers, the total Secret Service passengers, the total cost of each leg and the cost per passenger on each of the campaign flights;

4. Vacation Travel Expenses:

a. Requests copies of records of or reflecting the number of Secret Service agents involved in the detail for Vice President Harris and her family's flight and vacation in Hawaii

b. Any and all documents, including invoices or bills, related to payments or costs for Vice President Harris Secret Service members while on the island of Kauai and at Haena State Park.

c. Any and all documents, including invoices or bills, related to payments or costs for Fist Gentleman Douglas Emhoff's travel and stay in Hawaii on August 25, 2021.

d. Identities of any and all guests hosted by Vice President Harris and/or her family while on vacation;

5. Secret Service Issues or Incidents:

a. Any records regarding Secret Service security and or medical incidents that occurred while protecting Kamala Harris and her family.

b. All communication between Secret Service agents who are protecting the family and their supervisors and or Office of Professional responsibility, and or Office of Human Resources which reference Kamala Harris and or her family.

c. All Secret Service Memorandum that reference Kamala Harris and or her family.

d. All SSF 3361 (Civilian Employee Claim for Loss or Damage to Personal Property) that reference Kamala Harris and or her family.

Please be advised, your request for a fee waiver will be held in abeyance pending the quantification of responsive records.  The FOIA regulations, Title 6 C.F.R., Chapter I, Part 5 § 5.11(k)(2)(3), set forth six factors to examine when determining whether the applicable legal standard for a fee waiver has been met.  We will consider these factors:

1) Whether the subject of the requested records concerns "the operations or activities of the government;"
2) Whether the disclosure is "likely to contribute" to an understanding of government operations or activities;
3) Whether disclosure of the requested information will contribute to the understanding of the public at large, as opposed to the individual understanding of the requestor or a narrow segment of interested persons;
4) Whether the contribution of public understanding of government operations or activities will be "significant;"
5) Whether the requester has a commercial interest that would be furthered by the requested disclosure; and
6) Whether the magnitude of any identified commercial interest to the requestor is sufficiently large in comparison with the public interest in disclosure, that disclosure is primarily in the commercial interest of the requestor.

If your fee waiver is denied, we shall charge you for the records in accordance with FOIA regulations as they apply to "media" requesters. The first 100 pages of duplication are free of charge. As a "media" requester, you will be charged .10 cents a page for the duplication of each additional page.

Furthermore, the submission of your request is viewed as an agreement, by you, to pay duplication costs up to $25.00. A search for files responsive to your request is being conducted. The appropriate components of the Secret Service are being queried for responsive documents. If any responsive records are located, they will be reviewed for a disclosure determination. You will be contacted before any additional fees are accrued.

Due to the increasing number of FOIA requests received by this office, we may encounter some delay in processing your request. As your request seeks documents that will require a thorough and wide-ranging search, the Secret Service will invoke a 10-day extension for your request pursuant to 6 C.F.R., Part 5 § 5.5(c). If you would like to narrow the scope of your request, please contact our office. We will make every effort to comply with your request in a timely manner. Additionally, per Section 5.5(a) of the FOIA regulations, 6 C.F.R, Chapter I, Part 5, Secret Service processes FOIA requests according to their order of receipt.

If you need any further assistance, or would like to discuss any aspect of your request, please contact our FOIA Public Liaison Kevin Tyrrell, at (202) 220-1819. Alternatively, you may send an e-mail to FOIA@usss.dhs.gov. FOIA File No. 20230182 is assigned to your request. Please refer to this file number in all future communication with this office.

Thank you,

Freedom of Information Act Program
United States Secret Service
245 Murray Lane, SW, Building T-5
Mail Stop 8205
Washington, DC  20223

Phone: (202) 220-1819
Fax: (202) 220-1755
Email: FOIA@USSS.DHS.GOV

# Exhibit 5



**DEPARTMENT OF HOMELAND SECURITY**
UNITED STATES SECRET SERVICE
WASHINGTON, D.C. 20223

Freedom of Information Act Program
Communications Center
245 Murray Lane, SW, Building T-5, Mail Stop 8205
Washington, D.C. 20223

Date: November 17, 2022

Mike Howell
214 Massachusetts Avenue, NE
Washington, DC 20002
Email: oversightproject@heritage.org

File Number:   20230182

Dear Requester:

Reference is made to your Freedom of Information Act (FOIA) request, originally submitted to the
United States Secret Service (Secret Service) on November 8, 2022, for  information regarding,
Vice President Kamala Harris, and her family, Douglas Craig Emhoff, Ella Emhoff, and Cole
Emhoff:

1. Residences:
a. All records related to the costs that have been incurred or are expected to be incurred by the
government related to the protection of temporary and permanent residences and rentals (including
short-term and long-term rentals) used by Vice President Harris, Douglas Craig Emhoff, Ella
Emhoff, and Cole Emhoff. This includes but is not limited to: Blair House, Washington D.C., U.S.
Naval Observatory, Washington D.C., Brentwood Los Angeles, California, Westlight complex,
Washington D.C., SoMa condo, San Francisco California;

2. Personal Security:
a. All records related to plans for the sharing of information between the Secret Service and any
person or entity providing security to Vice President Harris and her family, including but not limited
to the sharing of the Secret Service's Master Central Index or other confidential databases.
b. All confidentiality agreements entered into between the Secret Service and any person or entity
providing security to Vice President Harris and her family.
c. All records related to the costs that have been incurred or are expected to be incurred by the
government related to Vice President Harris and her family's use of security;

3. Air Travel Expenses:
a. Any and all documents, including invoices or bills, related to payments for or costs of air
transportation of U.S. Secret Service personnel on Air Force Two and/or air and motor
transportation.
b. Any and all documents, including invoices or bills, related to payments for or costs of air
transportation of Secret Service personnel who were engaged in activities related to activities or
dealings of Vice President Harris and her family.
c. Identities of any and all guests who accompany Vice President Harris and/or her family on air
travel.

d. Vice President Harris and her family's charter air billing invoices, and their corresponding proof of payment, for any flight dates after 2020.

e. Identification of all air travel of Vice President Harris and/or her family that combined professional work appointments and vacation travel, to include the dates of the work appointments and the dates of vacation travel.

f. Any and all billing and payment information from the Secret Service regarding the air transportation cost of the Secret Service's protective details which accompanied Vice President Harris and her family during the Presidential campaign.

g. Please conduct a search of the Secret Services' relevant files and provide documents showing the total costs per trip for the air transportation of the Secret Service's agents in the 2019 campaign. We are requesting the Secret Service redacted portions of the documents which disclosed the total passengers, the total Secret Service passengers, the total cost of each leg and the cost per passenger on each of the campaign flights.

**SEE NOTES FOR ADDITIONAL REQUEST DESCRIPTION ITEMS**.

In response to your FOIA request, the Secret Service FOIA Office has conducted a reasonable search for all potentially responsive documents.  The Secret Service FOIA Office searched all Program Offices that were likely to contain potentially responsive records, and records were located.

We are processing the responsive records identified in connection with that search. They will be processed in accordance with the Freedom of Information Act, 5 U.S.C. § 552 and sent to you upon completion.

As referenced in our initial response to you, due to the increasing number of FOIA requests received by this office, we may encounter some delay in processing your request.  However, we are processing your request as expeditiously as possible.

Your request has been assigned FOIA File No. 20230182.  If you have any questions, would like to discuss this matter, or check the status of your request, please contact this office at (202) 220-1819. Alternatively, you may send an email to foia@usss.dhs.gov.

Please refer to the file number indicated above in all correspondence with this office.

Thank you,

Freedom of Information Act Program
United States Secret Service
245 Murray Lane, SW, Building T-5, Mail Stop 8205
Washington, DC  20223
Phone: (202) 220-1819
Fax: (202) 220-1755
Email: FOIA@USSS.DHS.GOV

# Exhibit 6

**Jankowski, Roman**

| | |
|---|---|
| **From:** | FOIA@usss.dhs.gov |
| **Sent:** | Wednesday, February 8, 2023 12:01 PM |
| **To:** | OversightProject |
| **Cc:** | Jankowski, Roman |
| **Subject:** | Status Update/USSS. No.: 20230182 |
| **Attachments:** | Ack. Fee Waiver Abeyance. Media Req. FOIA.docx; Search Done Ltr. Records Located. FOIA.pdf |

Dear Requester,

Reference is made to the telephone inquiry referencing the status of your requests. Please see the attached letters, previously sent, regarding the status of your Freedom of Information Act/Privacy Act request. Please confirm that you have received this email.

If you have any further questions or concerns, please contact this office.

Thank you,

Freedom of Information Act Program
United States Secret Service
245 Murray Lane, SW, Building T-5
Mail Stop 8205
Washington, DC  20223
Phone: (202) 220-1819
Fax: (202) 220-1755
Email: FOIA@USSS.DHS.GOV

All e-mail to/from this account is subject to official review and is for official use only. Action may be taken in response to any inappropriate use of the Secret Service's e-mail system. This e-mail may contain information that is privileged, law enforcement sensitive, or subject to other disclosure limitations. Such information is loaned to you and should not be further disseminated without the permission of the Secret Service. If you have received this e-mail in error, do not keep, use, disclose, or copy it; notify the sender immediately and delete it.

# **Exhibit 7**



**DEPARTMENT OF HOMELAND SECURITY**
UNITED STATES SECRET SERVICE
WASHINGTON, D.C. 20223

Freedom of Information Act Program
Communications Center
245 Murray Lane, S.W., Building T-5
Mail Stop 8205
Washington, D.C. 20223

Date:   April 17, 2023

Mike Howell
214 Massachusetts Avenue, NE
Washington, DC 20002
Email: Roman.Jankowski@heritage.org

File Number:   20230182

Dear Requester:

Reference is made to your Freedom of Information Act (FOIA) request, originally submitted to the United States Secret Service (Secret Service) on November 8, 2022, for information regarding, Vice President Kamala Harris, and her family, Douglas Craig Emhoff, Ella Emhoff, and Cole Emhoff:

1. Residences:
a. All records related to the costs that have been incurred or are expected to be incurred by the government related to the protection of temporary and permanent residences and rentals (including short-term and long-term rentals) used by Vice President Harris, Douglas Craig Emhoff, Ella Emhoff, and Cole Emhoff. This includes but is not limited to: Blair House, Washington D.C., U.S. Naval Observatory, Washington D.C., Brentwood Los Angeles, California, Westlight complex, Washington D.C., SoMa condo, San Francisco California;

2. Personal Security:
a. All records related to plans for the sharing of information between the Secret Service and any person or entity providing security to Vice President Harris and her family, including but not limited to the sharing of the Secret Service's Master Central Index or other confidential databases.
b. All confidentiality agreements entered into between the Secret Service and any person or entity providing security to Vice President Harris and her family.
c. All records related to the costs that have been incurred or are expected to be incurred by the government related to Vice President Harris and her family's use of security;

3. Air Travel Expenses:
a. Any and all documents, including invoices or bills, related to payments for or costs of air transportation of U.S. Secret Service personnel on Air Force Two and/or air and motor

transportation.

b. Any and all documents, including invoices or bills, related to payments for or costs of air transportation of Secret Service personnel who were engaged in activities related to activities or dealings of Vice President Harris and her family.

c. Identities of any and all guests who accompany Vice President Harris and/or her family on air travel.

d. Vice President Harris and her family's charter air billing invoices, and their corresponding proof of payment, for any flight dates after 2020.

e. Identification of all air travel of Vice President Harris and/or her family that combined professional work appointments and vacation travel, to include the dates of the work appointments and the dates of vacation travel.

f. Any and all billing and payment information from the Secret Service regarding the air transportation cost of the Secret Service's protective details which accompanied Vice President Harris and her family during the Presidential campaign.

g. Please conduct a search of the Secret Services' relevant files and provide documents showing the total costs per trip for the air transportation of the Secret Service's agents in the 2019 campaign. We are requesting the Secret Service redacted portions of the documents which disclosed the total passengers, the total Secret Service passengers, the total cost of each leg and the cost per passenger on each of the campaign flights.

**SEE NOTES FOR ADDITIONAL REQUEST DESCRIPTION ITEMS**.

In our previous correspondence, we advised you that due to the increasing number of FOIA requests received by this office, we could encounter some delay in processing your request.

At this time, documents responsive to your request have been located, forwarded to this office for review, and are in processing. Upon completion of the processing, all documents that can be released will be made available to you at the earliest possible date. As the Secret Service FOIA Program diligently works to provide a final response to your request, we appreciate your patience and cooperation.

FOIA File No. 20230182 is assigned to your request. If you have any questions or would like to discuss this matter, please contact Secret Service's FOIA Public Liaison Kevin Tyrrell at, (202) 220-1819. Alternatively, you may email this office at FOIA@usss.dhs.gov.

Please refer to the file number in all correspondence with this office.

Thank you,

Freedom of Information Act Program
United States Secret Service
245 Murray Lane, SW, Building T-5
Mail Stop 8205
Washington, DC  20223
Phone: (202) 220-1819
Fax: (202) 220-1755

Email: FOIA@USSS.DHS.GOV

# Exhibit 8

**Jankowski, Roman**

---

| | |
|---|---|
| **From:** | Jankowski, Roman |
| **Sent:** | Tuesday, September 12, 2023 4:00 PM |
| **To:** | FOIA@usss.dhs.gov |
| **Cc:** | OversightProject |
| **Subject:** | RE: Status Update/USSS. No.: 20230182 |

Good Afternoon, I hope everyone is doing well.  Can you please provide an update regarding USSS. No.: 20230182.

Also, did you receive a request from Mike Howell sometime after June 12 2023? I cant find an acknowledgement letter regarding the below FOIA. If you didn't receive it I will send it again.

_____

Roman Jankowski
*Senior Investigative Counsel, Oversight Project, Government Relations*
202-608-1503

---

**From:** FOIA@usss.dhs.gov <FOIA@usss.dhs.gov>
**Sent:** Monday, April 17, 2023 1:10 PM
**To:** Jankowski, Roman <Roman.Jankowski@heritage.org>
**Cc:** OversightProject <OversightProject@heritage.org>
**Subject:** Status Update/USSS. No.: 20230182

Dear Requester,

This is response to your email inquiry dated April 17, 2023.Please see the attached letter regarding the status of your Freedom of Information Act/Privacy Act request.

If you have any questions, please contact this office.

Thank you,

Freedom of Information Act Program
United States Secret Service
245 Murray Lane, SW, Building T-5
Mail Stop 8205
Washington, DC  20223
Phone: (202) 220-1819
Fax: (202) 220-1755
Email: FOIA@USSS.DHS.GOV


All e-mail to/from this account is subject to official review and is for official use only. Action may be taken in response to any inappropriate use of the Secret Service's e-mail system. This e-mail may contain information that is privileged, law enforcement sensitive, or subject to other disclosure limitations. Such information is loaned to you and should not be further disseminated without the permission of the Secret Service. If you have received this e-mail in error, do not keep, use, disclose, or copy it; notify the sender immediately and delete it.